1

2

3

4                                                    ☺

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  TAMIKO JONES,                    )   Case No. EDCV 12-0119-DTB
                                     )
12                  Plaintiff,       )
                                     )
13        vs.                        )   ORDER REVERSING DECISION OF
                                     )   COMMISSIONER AND REMANDING
14  MICHAEL J. ASTRUE,               )   FOR FURTHER ADMINISTRATIVE
    Commissioner of Social Security, )   PROCEEDINGS
15                                   )
                    Defendant.       )
16                                   )

17        Plaintiff filed a Complaint ("Complaint") on January 27, 2012, seeking review

18  of the Commissioner's denial of her applications for Disability Insurance Benefits and

19  Supplemental Security Income.  In accordance with the Magistrate Judge's Case

20  Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on September 27,

21  2012.  Thus, this matter now is ready for decision.[1]

22  / / /

23  / / /

24

25  ─────────────────

26        [1]    As the parties were advised in the Case Management Order, the decision
    in this case is being made on the basis of the pleadings, the Administrative Record
27  ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c)
    of the Federal Rules of Civil Procedure, the Court has determined which party is
28  entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

                                       1

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues here are as follows:

1.     Whether the Administrative Law Judge ("ALJ") failed to properly consider the opinions of plaintiff's treating psychiatrist Maria T. Salanga, M.D. ("Dr. Salanga") and examining psychiatrist Sohini P. Parikh, M.D. ("Dr. Parikh"). (Jt. Stip. 4-14.)

2.     Whether the ALJ properly considered plaintiff's obesity. (Jt. Stip. 14-20.)

3.     Whether the ALJ failed to pose a complete hypothetical to the vocational expert ("VE"). (Jt. Stip. 20-23.)

4.     Whether the ALJ properly determined plaintiff could perform her past relevant work as a greeter. (Jt. Stip. 23-28.)

5.     Whether the ALJ properly considered the lay witness statements of plaintiff's sister, Madhu Flanigan ("Ms. Flanigan"), her mother, Doris Somerville ("Ms. Somerville"), her landlord, Rebecca Wicks ("Ms. Wicks"), and her friend, Erica Haynes ("Ms. Haynes"). (Jt. Stip. 28-33.)

**DISCUSSION**

**I.     Reversal is warranted for consideration of Dr. Salanga's and Dr. Parikh's opinions.**

Plaintiff argues that "the ALJ did not provide specific and legitimate reasons supported by substantial evidence for giving little weight" to the opinions of Dr. Salanga and Dr. Parikh. (Jt. Stip. 9.)

In evaluating medical opinions, the Ninth Circuit distinguishes among three types of physicians: (1) Treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). In general, more weight should be given to the opinion of a treating

2

physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  Id.  Although a treating physician's opinion is entitled to special weight, McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (as amended), "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).   When a treating or examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  Where, as in this case, the treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  Id. at 830-31; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

Between October 2001 and May 2009, Dr. Salanga treated plaintiff for her mental impairments at the San Bernardino County Department of Behavioral Health through the Vista Community Counseling ("VCC") program, with some break in treatment roughly between the years of 2004 and 2006.  (See AR 265-299, AR 361-436, AR 466, AR 660-724, AR 1120, AR 1280-1321.)  Through VCC, plaintiff also received treatment from other mental health professionals, including therapists and psychologists.  (Id.)

On December 16, 2002, Dr. Salanga completed a Work Capacity Evaluation form, indicating plaintiff suffers from "marked" or "extreme" limitations in her ability to perform work-related activities on a day-to-day basis.  (See AR 437-38.)  On November 20, 2003, Dr. Salanga completed a Psychiatric Impairment Questionnaire, diagnosing plaintiff with major depressive disorder, assessing plaintiff with a Global Assessment of Functioning ("GAF") score of 45, and indicating her prognosis was

3

1  "poor." (AR 466-73.)  Again, Dr. Salanga indicated plaintiff suffers from moderate

2  to marked limitations in her mental functioning and ability to sustain work-like

3  activities. (Id.)  On August 7, 2009, Dr. Salanga completed a second Psychiatric

4  Impairment Questionnaire form, diagnosing plaintiff with major depressive disorder,

5  "recurrent, severe with psychotic features," assessing a GAF score of 50, and

6  indicating her prognosis was "guarded." (AR 1120-27.) For a third time, Dr. Salanga

7  noted plaintiff would have moderate to marked limitations in her ability to perform

8  work-like functions. (Id.)

9        On January 12, 2005, Dr. Parikh performed a complete psychiatric evaluation

10  of plaintiff. (AR 551-57.)  Dr. Parikh's evaluation included a review of plaintiff's

11  VCC records from 2002 through 2004 and a mental status examination. (Id.)  Dr.

12  Parikh diagnosed plaintiff with major depression with psychotic features and assessed

13  a GAF score of "55 to 60." (Id.)  Dr. Parikh opined plaintiff "is able to understand,

14  carryout, and remember simple instruction[,] . . . can follow complex instructions[,

15  but] . . . could not interact appropriately with coworkers." (AR 556.)  Dr. Parikh

16  further concluded plaintiff "could not respond appropriately to the usual work settings

17  in such matters as attendance and would have a hard time adjusting to changes in the

18  work routine because of psychosis." (Id.)

19        In his decision, the ALJ gave "little weight to the conclusions of [Dr. Salanga],

20  as her own examination findings or the medical record taken as a whole does not

21  support her conclusions." (AR 1142.)  The ALJ noted that plaintiff "has sought

22  treatment on a monthly to quarterly basis only and this was for medication refill and

23  review" and "has not been psychiatrically hospitalized." (AR 1142-43.)  He

24  concluded that it "would appear that the mild symptoms were successfully controlled

25  with medication and not disabling." (AR 1143.)

26        With respect to Dr. Parikh's opinion, the ALJ found it "is of minimal value as

27  the consultative examiner's examination results are not consistent with his

28  conclusions." (AR 1143.)  The ALJ further stated:

4

1
2
3
4
5
6
7
8
9
10

> [Plaintiff] had almost no objective symptoms.  Despite allegations that she could not focus she had good recall on the memory portion of the mental status examination.    [Plaintiff] was coherent, oriented and had adequate intellectual functioning.  Her report of hearing voices is inconsistent with prior reports that she did not hear voices or have hallucinations.   The functional assessment of Dr. Parikh is completely inconsistent with the assessment of a [GAF] score of between 55 and 60.  It appears that Dr. Parikh made a most superficial review and there was no summary of the medications presented to him.

11   (Id.)

12   The Court concludes the ALJ failed to provide specific and legitimate reasons
13   supported by substantial evidence for rejecting the opinions of Dr. Salanga and Dr.
14   Parikh.

15   First, to the extent the ALJ rejected Dr. Salanga's opinion based on a lack of
16   support in the medical record as a whole, his assessment is impermissibly broad and
17   conclusory and "does not achieve the level of specificity" required to justify his
18   rejection of the opinion of plaintiff's treating physician.  See Embry v. Bowen, 849
19   F.2d 418, 421-22 (9th Cir. 1988) (conclusory reason "does not achieve the level of
20   specificity" required to justify an ALJ's rejection of a treating source's medical
21   opinion); McAllister, 888 F.2d at 602 (ALJ's rejection of treating physician's opinion
22   on the ground that it was contrary to the clinical findings in the record was "broad and
23   vague, failing to specify why the ALJ felt the treating physician's opinion was
24   flawed."); Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("Merely to state
25   that a medical opinion is not supported by enough objective findings does not achieve
26   the level of specificity our prior cases have required, even when the objective factors
27   are listed seriatim.") (internal quotation marks and citation omitted).

28   / / /

5

1   Second, the ALJ's rejection of Dr. Salanga's opinion because plaintiff "has
2   sought treatment on a monthly to quarterly basis only" is not a specific and legitimate
3   reason. Dr. Salanga treated plaintiff over the span of almost a decade and based her
4   opinion on her own treatment of plaintiff *and* the opinion of her treatment team.
5   Although Dr. Salanga monitored plaintiff on a monthly or quarterly basis for
6   "medication refill and review," (see AR 466, AR 1120), plaintiff received extensive
7   counseling at VCC every one to two weeks. (See, e.g., AR 364-85; see also AR 490-
8   91.)

9   Third, the ALJ's reasons for discounting Dr. Parikh's opinion are not supported
10  by substantial evidence. For instance, although the ALJ found that plaintiff's "report
11  of hearing voices is inconsistent with prior reports that she did not hear voices or
12  have hallucinations," (AR 1143), a review of the record demonstrates that apart from
13  a single report completed by a family nurse practitioner that indicated plaintiff did not
14  suffer from hallucinations, plaintiff consistently reported hallucinations to her mental
15  health treatment team at VCC. (Compare AR 492-95 (evaluation form for mental
16  disorder, completed on August 28, 2002 by family nurse practitioner, indicating no
17  evidence of hallucinations) with AR 298-99 (treatment note, dated October 12, 2001,
18  indicating plaintiff "can see deceased grandmother"), AR 466-73 (Dr. Salanga
19  diagnosing plaintiff with major depression "with psychotic features"), AR 503
20  (treatment note, dated March 1, 2004, reporting plaintiff's medication effectively
21  helping to reduce hallucinations), AR 1286-87 (treatment note, dated on or about
22  February 2, 2010, indicating "paranoid delusions and A/V hallucinations are
23  reduced").)

24  Further, the ALJ erred in finding "Dr. Parikh made a most superficial review"
25  because "there was no summary of the medications presented to him." (AR 1143.)
26  To the contrary, Dr. Parikh noted that he reviewed plaintiff's treatment records from
27  VCC, "dated from 2/5/2002 to 8/5/2004," and summarized that plaintiff was
28  "prescribed Cogentin, Seroquel, Abili[f]y, and Lexapro, along with pain

6

1    medications."  (AR 552; see also AR 555 (Dr. Parikh noting plaintiff "is taking
2    Seroquel, Cogentin, Abilify, and Lexapro at the present time").)

3    Moreover, the ALJ erred in his determination that Dr. Parikh's "examination
4    results are not consistent with his conclusions" because plaintiff "had almost no
5    objective symptoms," "had good recall on the memory portion of the mental status
6    examination," and "was coherent, oriented and had adequate intellectual functioning."
7    (AR 1143.)  Dr. Parikh's diagnosis and conclusions are supported by the record,
8    including his own mental status examination.  (See, e.g., AR 265-99 (VCC treatment
9    record from 2001 through 2002), AR 660-724 (VCC treatment record from 2001
10   through 2003), AR 1280-1321 (VCC treatment record from 2007 through 2010).) Dr.
11   Parikh found plaintiff's mood to be "depressed, tearful, and anxious." (AR 554.)  He
12   also observed plaintiff "exhibited psychomotor retardation" and could not "perform
13   serial sevens and serial threes." (AR 554-55.)  Accordingly, the ALJ has improperly
14   substituted his own interpretation of the evidence without setting forth sufficient
15   authority or medical evidence to support his interpretation.  Banks v. Barnhart, 434
16   F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own
17   judgment for competent medical opinion, and he must not succumb to the temptation
18   to play doctor and make his own independent medical findings.") (internal quotation
19   marks, alterations and citations omitted).

20   In short, Disputed Issue One warrants reversal of the Commissioner's decision.

21

22   **II.    Reversal is not warranted based on the ALJ's evaluation of plaintiff's**
23   **obesity.**

24   In Disputed Issue Two, plaintiff argues that "[e]ven though the medical record
25   establishes that plaintiff is obese and the ALJ identified it as one of plaintiff's severe
26   impairments, he failed to provide the proper analysis to determine the effect of the
27   plaintiff's obesity upon her other impairments, ability to work, and general health, as
28   required to do so by law." (Jt. Stip. 14-15.)

7

1    Although the Commissioner delisted obesity from the Listing of Impairments
2    in October 1999, he issued a Social Security Ruling ("SSR") in 2002 that instructed
3    ALJs of the continued role of obesity in disability evaluations.  See SSR 02-01p, 2000
4    WL 628049, at *1.  SSR 02-01p recognizes "that the combined effects of obesity with
5    other impairments may be greater than the effects of each of the impairments
6    considered separately[]" and that adjudicators must consider obesity under all steps
7    of the disability analysis, "including when assessing an individual's residual
8    functional capacity."  Id.; see also Celaya v. Halter, 332 F.3d 1177, 1182-83 (9th Cir.
9    2003) (ALJ has responsibility to consider "interactive effect" of obesity on claimant's
10   conditions; responsibility triggered when obesity is implicitly raised by claimant's
11   symptoms, a review of the record demonstrates claimant's obesity is close to listing
12   criterion, and claimant is pro se).

13   Because there is no listing for obesity, "an individual with obesity 'meets' the
14   requirements of a listing if he or she has another impairment that, by itself, meets the
15   requirements of a listing."  SSR 02-01p, 2000 WL 628049, at *5.  Equivalence is also
16   found "if an individual has multiple impairments, including obesity, no one of which
17   meets or equals the requirements of a listing, but the combination of impairments is
18   equivalent in severity to a listed impairment."  Id.

19   However, the claimant "bears the burden of proving that she has an impairment
20   that meets or equals the criteria of [a listed] impairment[.]"  Burch v. Barnhart, 400
21   F.3d 676, 683 (9th Cir. 2005) (internal quotation marks, citation, and ellipses
22   omitted).  Further, an "ALJ will not make assumptions about the severity or
23   functional effects of obesity combined with other impairments.  Obesity in
24   combination with another impairment may or may not increase the severity or
25   functional limitations of the other impairment.  The ALJ [must] evaluate each case
26   based on the information in the case record."  Id. at 682 (citing SSR 02-01p) (brackets
27   and emphasis omitted).

28   / / /

8

1    The Court is persuaded that the ALJ did not err in his evaluation of plaintiff's
2    obesity.

3    First, although the ALJ did not provide a discussion regarding the effects of
4    plaintiff's obesity in combination with her other impairments in subsequent steps of
5    the five-step sequential evaluation process, the ALJ did find that plaintiff's "morbid
6    obesity" constituted a severe impairment at step two. (AR 1134.)  Thus, it is not clear
7    that the ALJ failed to consider plaintiff's obesity in making his step three and step
8    four findings.  See Hamilton v. Astrue, 2010 WL 3748744, at *8-11 (C.D. Cal. 2010)
9    (finding no reversible error where ALJ found plaintiff's obesity to be severe
10   impairment at step two but did not otherwise discuss the combined effect of obesity
11   with her other impairments in subsequent steps).

12   However, assuming arguendo the ALJ failed to do so, plaintiff cites to no
13   evidence that any physician or other medical provider indicated that her obesity
14   exacerbated her impairments or resulted in any functional limitation, as is her burden.
15   (See generally Jt. Stip. 14-18, 20.)  A review of the record indicates that plaintiff's
16   physicians, treating or otherwise, did not opine that plaintiff's obesity contributes to
17   her limitations.  (See generally AR 1-1696.)  Nor does plaintiff point to anywhere in
18   the record where she ever complained that obesity contributed to her disability.  (See
19   generally Jt. Stip. 14-18, 20.)

20   Accordingly, given plaintiff's failure to present evidence in an effort to
21   establish equivalence or demonstrate that her obesity was the cause of her limitations,
22   the ALJ was not required to compare her impairments to any listing in an equivalency
23   determination or conduct a multiple impairment analysis including obesity in his RFC
24   determination.  See Burch, 400 F.3d at 684 ("[Claimant] has not set forth, and there
25   is no evidence in the record, of any functional limitations as a result of her obesity
26   that the ALJ failed to consider."); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)
27   / / /
28   / / /

1  (ALJ not required to discuss combined effects of a claimant's impairments or
2  compare them to any listing in an equivalency determination unless the claimant
3  presents evidence in an effort to establish equivalence).

4          Second, and in any event, defendant argues and the Court agrees, plaintiff does
5  not appear to be obese based on the medical record.  (See Jt. Stip. 19 n. 1.)  At a
6  complete orthopedic evaluation performed on June 20, 2009, plaintiff weighed 173
7  pounds and was 67 inches tall.  (AR 964, AR 966.)  In a more recent treatment note,
8  dated July 27, 2011, plaintiff's physician noted plaintiff's weight was 180 pounds.
9  (AR 1639.)  However, a Body Mass Index ("BMI") of 30 or above is considered
10 obese.  See SSR 02-01p, 2000 WL 628049, at *2 ("For adults . . . the Clinical
11 Guidelines describe a BMI of . . . 30.0 or above as 'obesity.'").  BMI is the ratio of
12 an individual's weight in kilograms to the square of height in meters.  Id.  Here,
13 plaintiff's BMI based on her heavier measurement of 180 pounds is 28.2.
14 www.nhlbisupport.com.  As such, plaintiff is not obese based on the Clinical
15 Guideline's framework.

16         Third, although plaintiff cites to Celaya, 332 F.3d at 1182, in support of her
17 proposition that the "ALJ must determine the effect of the claimant's obesity upon
18 [her] other impairments, [her] ability to work, and [her] general health," (Jt. Stip. 15),
19 unlike the claimant in Celaya, plaintiff was represented by counsel.  See Celaya, 332
20 F.3d at 1182; Burch, 400 F.3d at 682.  Yet, plaintiff has failed to point to any medical
21 evidence of her obesity causing functional limitations.

22         The Court concludes that the ALJ did not commit reversible error in connection
23 with his consideration of plaintiff's obesity.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

10

1    **III.**    **Reversal is warranted based on the ALJ's determination that plaintiff**
2           **could perform her past relevant work as a greeter.**

3           In Disputed Issue Four, plaintiff asserts that "[d]ue to [her residual functional
4    capacity ("RFC")] that she is limited to only occasional handling and reaching, she
5    would be unable to perform the job of greeter" which requires "frequent handling and
6    reaching." (Jt. Stip. 25.)

7           At Step Four of the Commissioner's five-step disability analysis, a claimant is
8    "not disabled" if she retains the RFC to perform the "actual functional demands and
9    job duties of a particular past relevant job" or the "functional demands and job duties
10   of the occupation as generally required by employers throughout the national
11   economy." SSR 82-61, 1982 WL 31387, at *2; see also 20 C.F.R. § 416.920(f).
12   Although the burden of proof lies with the claimant at Step Four, the ALJ still is
13   required to make the requisite factual findings to support his conclusion that plaintiff
14   can perform her past relevant work. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir.
15   2001). This requires three things: (1) A finding of fact as to the individual's RFC; (2)
16   a finding of fact as to the physical and mental demands of the past job/occupation;
17   and (3) a finding of fact that the individual's RFC would permit a return to her past
18   job or occupation. SSR 82-62, 1982 WL 31386, at *4; Pinto, 249 F.3d at 845.

19          Following his Step Three finding, the ALJ assessed plaintiff's RFC and
20   determined she can perform light work. (AR 1144.) The ALJ further found:

21                  [Plaintiff can] lift, carry, push or pull twenty pounds occasionally,
22                  and ten pounds frequently, sit six hours in an eight-hour workday
23                  with normal breaks, stand or walk six hours in an eight-hour
24                  workday with normal breaks, occasionally balance, stoop, kneel,
25                  crouch, crawl, and climb ramps or stairs, climb ladders and
26                  scaffolds occasionally, occasional fingering, handling, and
27                  reaching in all directions including overhead, avoid concentrated
28                  exposure to extreme heat, extreme cold, humidity, vibration,

1    pulmonary irritants such as fumes, odors dusts, cases, and poor

2    ventilation, and hazards such as machinery and unprotected

3    heights, more than four to five step instructions, no fast paced

4    work, and nonhabituated tasks.

5    (Id.) (bold omitted).

6

7    During an administrative hearing on September 12, 2011, the VE testified that

8    plaintiff's past relevant work as a greeter is reflected in the <u>Dictionary of</u>

9    <u>Occupational Titles</u> ("DOT") as DOT 352.667-010.  (AR 1658, AR 1670-71); DOT

10   352.667-010, 1991 WL 672913 (description of "host/hostess" position). The VE then

11   testified that a person with plaintiff's limitations and transferable skills could perform

12   her past relevant work as a greeter.  (AR 1671-72.)

13   The Court finds that the ALJ erred in his Step Four determination.

14   The threshold issue here is whether there was an apparent conflict between the

15   VE's testimony that plaintiff could perform the job of a greeter, in light of her

16   identified limitations, and the applicable DOT description.  The job of greeter

17   requires frequent handling and reaching, which is defined as 1/3 to 2/3 of the time.

18   DOT 352.667-010, 1991 WL 672913.  The VE testified that plaintiff could perform

19   the job of greeter.  (AR 1671-72.)  The ALJ did not inquire as to whether there was

20   a conflict between the VE's testimony and the DOT.  (<u>See generally</u> AR 1658-73.)

21   In light of the ALJ's RFC finding that plaintiff is limited to "occasional . . .

22   handling, and reaching in all directions," (AR 1144 (bold omitted)), an apparent

23   conflict exists between the DOT definition of greeter and the VE's testimony.  That

24   conflict was not acknowledged or reconciled by the VE during his testimony, or by

25   the ALJ in his decision.  (<u>See generally</u> AR 1131-1147, AR 1658-73.)  While the ALJ

26   may rely on the VE's testimony that conflicts with the DOT, the ALJ must determine

27   "whether the [VE's] explanation for the conflict is reasonable and whether a basis

28   exists for relying on the expert rather than the [DOT]."  <u>Massachi v. Astrue</u>, 486 F.3d

12

1149, 1153 (9th Cir. 2007) (footnote omitted).  Although the VE may have been able to provide such an explanation, in this case the ALJ failed to obtain one.

Thus, Disputed Issue Four also warrants reversal of the Commissioner's decision.

## IV.   Reversal is not warranted based on the ALJ's failure to properly consider the lay-witness evidence.

In Disputed Issue Five, plaintiff contends that the "ALJ only briefly summarized the testimony of third party witnesses and did not specify which specific statements of the third party witnesses that he accepted or rejected." (Jt. Stip. 31.) Plaintiff maintains the ALJ "has failed to give germane reasons for rejecting this extremely relevant testimony." (Id.)

Testimony from someone in a position to observe a claimant's symptoms and daily activities is "competent evidence." Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)); see also Lewis, 236 F.3d at 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.") (citations omitted).  An ALJ must consider this testimony in determining whether a claimant can work.  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); see also 20 C.F.R. § 416.913(d)(4); Smolen v. Chater, 80 F.3d 1273,1288 (9th Cir. 1996).  In order to discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." Stout, 454 F.3d at 1053; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).  An ALJ's error in failing to consider lay witness testimony is subject to a harmless-error analysis.  Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Stout, 454 F.3d at 1056.  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider

the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

On April 26, 2002, Ms. Haynes, plaintiff's best friend, completed a Daily Activities Questionnaire form on behalf of plaintiff. (AR 146-51.) Ms. Haynes stated that plaintiff "is usually resting, taking a lot of medication" and the "majority of the time she is in severe pain." (AR 146.) Ms. Haynes indicated that plaintiff's "kids and mother, sister . . . prepare [her] meals" and plaintiff is unable to do any household chores "except maybe clear the table." (AR 147, AR 148.)

On May 2, 2002, Ms. Wicks, plaintiff's landlord, completed a Daily Activities Questionnaire form on behalf of plaintiff. (AR 140-45.) In the form, Ms. Wicks reported that plaintiff generally "stay[s] home all day" "unless she is going to the Doctor's." (AR 140.) Ms. Wicks stated that she "never see[s plaintiff] doing chores" and she "can't anyways in the condition she is in." (AR 142.) Ms. Wicks relayed that plaintiff's children and family members help her in preparing meals and completing chores. (AR 141, AR 142.) Ms. Wicks noted that she "does not live with" plaintiff and could not respond to a number of the questions regarding plaintiff's daily activities with certainty. (AR 140.)

On February 3, 2003, plaintiff's sister Ms. Flanigan testified at an administrative hearing. (AR 836, AR 869-73.) Ms. Flanigan stated that she lives next door to plaintiff and is able to observe that plaintiff "is in constant pain." (AR 869, AR 870.) She reported that plaintiff "is always tired," "doesn't sleep very well" and "is really emotional." (AR 870.) She testified that she helps plaintiff with "the kids['] school work, and cleaning up around the house." (AR 872.)

On March 22, 2010, plaintiff's mother Ms. Somerville completed a Third Party Function Report on behalf of plaintiff. (AR 1251-58.) In the report, Ms. Somerville stated that plaintiff "sleeps most of the day" and wakes up only "to eat and take her meds." (AR 1251.) She indicated that plaintiff "cannot take care of herself" and

14

1    "never" prepares any meals and her "meals are always prepared for her by family
2    member[s]." (AR 1252, AR 1253.) Ms. Somerville also noted plaintiff "cannot do
3    house or yard work." (AR 1253.)

4         The ALJ assessed the lay witnesses' statements and found "the statements of
5    [plaintiff's] relatives and acquaintances to the extent they are even inconsistent with
6    the residual functional capacity found herein[,] they are not given any weight to the
7    extent that they are inconsistent with the treatment record[.]" (AR 1144.) The ALJ
8    further highlighted that plaintiff's "landlord admitted that she was not sure of some
9    of the answers because she did not live with" her and Ms. Haynes "g[a]ve the reader
10   no idea" the amount of time she regularly spends with plaintiff and is able to observe
11   her. (AR 1145-46.)

12        The Court concludes the ALJ erred in his assessment of the lay witnesses'
13   statements, but finds the error harmless.

14        Here, the ALJ rejected all of the lay witnesses' statements to the extent that
15   they are inconsistent with the objective medical evidence of record. "One [germane]
16   reason for which an ALJ may discount lay witness testimony is that it conflicts with
17   medical evidence." Lewis, 236 F.3d at 511; Pallas v. Astrue, 246 Fed. Appx. 426,
18   428 (9th Cir. 2007) (finding ALJ properly rejected lay witness report where medical
19   evidence contradicted lay witness's statements); Bayliss v. Barnhart, 427 F.3d 1211,
20   1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for
21   discrediting the testimony of a lay witness). However, given the Court's
22   determination that the ALJ improperly evaluated the medical evidence and in light
23   of the voluminous record at hand with over 1,600 pages and no reference to the
24   record in this part of the ALJ's decision, the Court cannot find the ALJ's reason is
25   supported by substantial evidence. See also Robbins, 466 F.3d at 884 n. 2 ("[W]ith
26   no reference to the record in this part of the decision, we are left to guess what
27   testimony the ALJ was considering and why he thought it undermined [plaintiff]'s
28   credibility.").

15

1    With respect to Ms. Haynes, the ALJ discounted her statements because she

2  "stated 'when I'm over there' giving the reader no idea of how long or at what times

3  that would be." (AR 1146; see also AR 146.)  This reason is not supported by

4  substantial evidence.  The questionnaire did not ask Ms. Haynes how often she is in

5  contact with plaintiff.  (See generally AR 146-151.)  Further, Ms. Haynes reported

6  that she "tr[ies] to come and visit [plaintiff] every other day and [calls] her every day

7  to see how she is feeling." (AR 149.)  Accordingly, Ms. Haynes described the extent

8  of her relationship with plaintiff and was in a sufficient position to observe plaintiff's

9  symptoms.

10    Nevertheless, the Court concludes any error was harmless because the lay

11  witnesses' statements were largely similar to plaintiff's own subjective symptom

12  statements, which were properly discredited.[2]  See Molina v. Astrue, 674 F.3d 1104,

13  1114-20 (9th Cir. 2012) ("Where lay witness testimony does not describe any

14  limitations not already described by the claimant, and the ALJ's well-supported

15  reasons for rejecting the claimant's testimony apply equally well to the lay witness

16  testimony," ALJ's failure to discuss the lay witness testimony is harmless); Valentine,

17  574 F.3d at 694 (if ALJ gave germane reasons for rejecting claimant's testimony,

18  those reasons are equally germane to similar testimony by a lay witness).

19    Further, the ALJ did provide a germane reason for discounting Ms. Wicks's

20  statements.  The ALJ noted that Ms. Wicks was uncertain in a number of her

21

22    [2]    The ALJ properly discounted plaintiff's subjective complaints of pain
based on three reasons: (1) There were inconsistencies between plaintiff's statements

23  and the medical evidence; (2) the objective medical evidence does not support

24  plaintiff's alleged degree of disability; and (3) plaintiff's failure to seek treatment
casts doubt on the credibility of her claim of functionally disabling pain. (AR 1145

25  (ALJ providing specific examples of inconsistences); see also AR 1231-38 (Adult

26  Function Report completed by plaintiff indicating family prepares her meals and she
is unable to perform any chores); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

27
28  2002);  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

16

1   responses because she "did not live with" plaintiff. (AR 1145.) This reason is
2   supported by substantial evidence. Ms. Wicks responded to a majority of the
3   questions with "it seems," "I believe," "as far as I'm aware," and indicated twice in
4   the questionnaire that she could not answer a question definitively because she does
5   not live with plaintiff. (AR 140-45.) Accordingly, the ALJ properly discounted Ms.
6   Wicks's statements because she could not attest to plaintiff's daily activities with
7   certainty.

8       In sum, this final issue does not warrant reversal.

9

10  **IV.   Disputed Issue Three may be resolved upon further proceedings.**

11      Plaintiff's remaining claim is directly implicated by the resolution of Disputed
12  Issue One. Resolution of Disputed Issue Three – in which plaintiff challenges the
13  questioning of the vocational expert – is dependent on the ALJ's proper evaluation
14  of the medical evidence as discussed above. Accordingly, the Court declines to
15  determine the merits of Disputed Issue Three, as it is more appropriately addressed
16  by the ALJ upon further administrative proceedings.

17

18                    **CONCLUSION AND ORDER**

19      The law is well established that the decision whether to remand for further
20  proceedings or simply to award benefits is within the discretion of the Court. See,
21  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at
22  603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand for the
23  payment of benefits is appropriate where no useful purpose would be served by
24  further administrative proceedings, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.
25  2004); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d
26  1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt
27  of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as
28  amended).

This is not an instance where no useful purpose would be served by further administrative proceedings.  As such, remand for further administrative proceedings is appropriate.  See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  On remand, the ALJ shall reevaluate the opinions of plaintiff's treating and evaluating mental health physicians and either credit the opinions as true, or provide specific and legitimate reasons for any portion of their opinion that is rejected.  The ALJ shall then, with the assistance of a VE, determine if plaintiff can perform her past relevant work or other work existing in significant numbers in the national economy.

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: January 10, 2013

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

18